# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENT BASSKNIGHT,<br>      Plaintiff | : | No. 3:16cv1464 |
| | : | |
| | : | **(Judge Munley)** |
|     v. | : | |
| | : | **(Magistrate Judge Mehalchick)** |
| NANCY A. BERRYHILL,<br>**Acting Commissioner of Social Security**,<br>      Defendant[1] | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is Magistrate Judge Karoline Mehalchick's report and recommendation (hereinafter "R&R") which proposes denying Plaintiff Brent Bassknight's (hereinafter "plaintiff" or "claimant") appeal of Defendant Social Security Administration's (hereinafter "SSA") decision denying plaintiff's claims for a period of disability and disability insurance benefits under Titles II and XVI of the Social Security Act. (Doc. 19). Plaintiff's action is brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g). The matter is fully briefed and ripe for disposition.

---

[1] Carolyn Colvin was the Acting Commissioner of Social Security at the time plaintiff filed this case. Thus she was the originally named defendant. Since then, Nancy A. Berryhill has assumed the Acting Commissioner position. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Berryhill is automatically substituted as the named defendant.

**Background**

Plaintiff began his quest for disability, disability insurance benefits, and supplemental security income on August 28, 2012, when he filed both a Title II and Title XVI application due to dysfunctional major joints, bilateral knees, obstructive sleep apnea, and obesity. (Doc. 1, ¶ 5). Plaintiff alleges that his disability began November 1, 2011. (Id.) After the SSA denied plaintiff's applications on December 6, 2012, plaintiff requested a hearing before an Administrative Law Judge (hereinafter "ALJ"). (Doc. 1, ¶ 7-8).

At said hearing on October 1, 2014, Judge Daniel Myers found that plaintiff was not disabled under the Social Security Act. (Doc. 1, ¶ 8; Doc. 8-2, at 19-29). Plaintiff appealed this decision to the SSA Appeals Council, and his appeal was denied on May 20, 2016. (Doc. 1 ¶ 9).

Plaintiff initiated the instant action on July 18, 2016, asking us to reverse the decision of the ALJ and award benefits, or remand for a new hearing on disability. (Doc. 1). Plaintiff seeks this reversal on the grounds that the ALJ's decision to deny his claim was "not supported by substantial evidence and is based on the incorrect application of legal principles." (Doc. 1 ¶ 13).

Magistrate Judge Mehalchick reviewed the record in this case and recommends that plaintiff's request for relief be denied and final judgment be issued in favor of the defendant. (Doc. 19). Plaintiff filed objections to the R&R.

2

(Doc. 20). On September 11, 2017, defendant filed a response, bringing the case to its present posture. (Doc. 21).

**Jurisdiction**

The court has federal question jurisdiction over this SSA appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business....").

**Legal Standard**

In disposing of objections to a magistrate judge's R&R, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. S 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole

or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "[S]ubstantial evidence has been defined as 'more than a mere scintilla.' " Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute their own conclusions for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may

be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

5

not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The ALJ evaluates disability insurance and supplemental security income claims with a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). This analysis requires the ALJ to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4).

Applying the five-step sequential analysis to the instant case, the ALJ found at Step 1 that plaintiff "has not engaged in substantial gainful activity since November 1, 2011, the alleged onset date." (Doc. 8-2 at 22). At Step 2, he found that plaintiff had the following severe impairments: dysfunction of major joints, bilateral knees; obstructive sleep apnea; and obesity. (Id.) At Step 3, the ALJ

6

found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Doc. 8-2 at 24).

The ALJ next determined that plaintiff has the residual functional capacity (hereinafter "RFC") to "perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a) except: the [plaintiff] can occasionally bend, stoop, and climb stairs; no kneeling, crawling, and crouching; and must avoid hazards such as unprotected heights and moving machinery." (Doc. 8-2 at 25).

The ALJ then proceeded to Step 4 of the sequential evaluation where he found that plaintiff was "unable to perform any past relevant work." (Doc. 8-2 at 27). The ALJ identified past relevant work as a warehouse worker, truck driver, survey helper, mold maker, concrete truck driver, order picker, grinder operator, and finisher, stating each required medium or heavy exertional work. (Doc. 8-2 at 27).

Finally, at Step 5, the ALJ determined that because plaintiff is a younger individual at age 49, has at least a high school education, and is able to communicate in English, plaintiff could successfully adjust to other work. (Doc. 8-2 at 27). Specifically, the ALJ found that plaintiff could work as a small parts assembler, product inspector, and surveillance system monitor. (Doc. 8-2 at 28). The vocational expert testified that these jobs exist in the national economy for

7

an individual with the plaintiff's age, education, work experience, and residual functional capacity. (Id.) Because the ALJ concluded that plaintiff is capable of making a successful adjustment to other work, he determined that plaintiff does not qualify as a disabled individual. Plaintiff then filed the instant appeal.

The Clerk of Court assigned plaintiff's appeal to Magistrate Judge Karoline Mehalchick for an R&R. Magistrate Judge Mehalchick recommends denying plaintiff's appeal and entering final judgment in favor of the defendant. (Doc. 19). Specifically, Magistrate Judge Mehalchick determined that the defendant's decision to deny plaintiff's claims for disability and disability insurance benefits is supported by substantial evidence in the record.

Plaintiff objects to Magistrate Judge Mehalchick's R&R, asserting that (1) the ALJ erred at Step 3 of the disability determination process in finding that plaintiff's disability did not meet medical listing 1.02A; and (2) the ALJ failed to properly weigh the opinion evidence on the record. (Doc. 20). The defendant counters with the primary assertion that plaintiff's objections are a mere reiteration of the arguments raised in his opening briefs, and that his issues have already been fully presented in this case. (Doc. 21 at 2-3). While we agree with the defendant that these objections are a reiteration of prior arguments, we review them with careful consideration and rely on the record as the basis for our analysis.

**I. Medical Listing 1.02A**

Plaintiff argues that the ALJ erred in determining that plaintiff's severe impairments did not meet or medically equal Listing 1.02. At Step 2 the ALJ found that plaintiff suffered from severe impairments. From there, if plaintiff's severe impairments met or equaled a listed impairment, in this case Listing 1.02, he would have been considered disabled per se and awarded disability benefits. However, a claimant has the burden of proving that his or her severe impairment or impairments meet or equal a listed impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). To do this a claimant must show that all of the criteria for a listing are met. Id. An impairment that meets only some of the criteria for a listed impairment is not sufficient. Id.

To qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, plaintiff has the burden to present "medical findings equal in severity to all the criteria for the one most similar listed impairment." 493 U.S. at 531. The Social Security Regulations require that an applicant for disability benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the

applicant] say[s] [he or she is] disabled." 20 C.F.R. §§ 404.1512(c) and 416.912(c).

Plaintiff contends that his severe impairments meet or equal the criteria of Listing 1.02., which relates to "[m]ajor dysfunction of a joint." The listing states in relevant part as follows: "1.02 Major dysfunction of a joint(s) (due to any cause)" is "[c]haracterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.02. Plaintiff in this case has cited specifically to Listing 1.02(A), which requires that the major dysfunction involve "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b."

> To be considered able to ambulate effectively, individuals must:
>
> be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

10

20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b).

As Magistrate Judge Mehalchick discussed in her R&R, the ALJ in this case found that the plaintiff is able to ambulate without a cane, let alone without requiring the examples provided by 1.00(B)(2)(b) such as two canes or a walker. (Doc. 8-2 at 25; Doc. 19 at 9). Plaintiff himself testified at the hearing on this matter that he often left his cane in the car because he would "forget it." (Doc. 8-2 at 51). Additionally, the ALJ found that plaintiff is capable of carrying out activities of daily living. For example, he goes out three to four times per week for significant periods of time and travels without assistance. (Doc. 8-1 at 62).

Ultimately, the ALJ determined that plaintiff did not meet all of the criteria for meeting or medically equaling Listing 1.02(A). Although the ALJ did not articulate which specific findings he relied on when determining plaintiff did not meet Listing 1.02, we agree with Magistrate Judge Mehalchick that the record contains substantial evidence that supports the ALJ's determination. Plaintiff's objection to Magistrate Judge Mehalchick's R&R on this point will be overruled.

## II. Weight of Opinion Evidence

The record reflects that two treating physicians, Dr. Gbadouwey and Dr. Stutzman, proffered opinion testimony. (Doc. 10 at 12). Plaintiff argues that the ALJ's "rejection of all opinion evidence created an evidentiary deficit." (Doc. 20 at 5). Plaintiff's position is that the ALJ failed to properly articulate the rationale for

11

discounting either opinion, that the ALJ should have contacted either Dr. Gbadouwey or Dr. Stutzman if unsatisfied with their opinions, and that the record contains no opinion evidence to support the ALJ's RFC. (Doc. 10 at 12-18). Magistrate Judge Mehalchick, however, found that these opinions were properly discounted, thoroughly discussed, and that the ALJ's decision is supported by substantial evidence. (Doc. 19 at 13). We agree with the magistrate judge.

The Social Security Regulations provide that "medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Treating physicians, examining physicians, and non-examining physicians may provide medical opinions. 20 C.F.R. § 404.1527(c)(1)-(2). The Regulations provide special deference to medical opinions from treating sources who have "seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment" ("treating source rule"). 20 C.F.R. § 404.1527(c)(2).

The treating source's opinion is entitled to controlling weight, however, "only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

in [the claimant's] case record....' " Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202 (quoting 20 C.F.R. § 404.1527(c)(2)). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

In choosing to reject the evaluation of a treating physician, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinions outright only on the basis of contradictory medical evidence. Id. at 317 (citations omitted). An ALJ may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation, or lay opinion. Id. An ALJ may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id. at 318 (citation omitted).

The court recognizes that the ALJ's RFC must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding his activities of daily living, medical records, lay evidence, and evidence of pain. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121-22 (3d Cir. 2000). ALJs cannot speculate a claimant's RFC but must have medical evidence, and

13

generally a medical opinion regarding the functional capabilities of the claimant, supporting their determination. See Tilton v. Colvin, 184 F. Supp. 3d 135, 146-47 (M.D. Pa. 2016).

In the instant matter, the ALJ first reviewed a physical RFC conducted by Dr. Gbadouwey on August 29, 2014. (Doc. 8-11 at 58-63). Dr. Gbadouwey opined that because of plaintiff's diagnoses of obstructive sleep apnea and morbid obesity, with symptoms of shortness of breath, plaintiff: could stand and/or walk less than two hours in a workday; could sit about two hours of the workday; would require unscheduled breaks every half hour for thirty minutes at a time; would require a job allowing plaintiff to shift positions at will; did not require a cane or assistive device; could occasionally lift and carry less than ten pounds and rarely lift ten pounds; could frequently look up and down, turn his head right and left, and hold his head in a static position; could rarely climb ladders; could occasionally twist, stoop, crouch, and climb stairs; and would be absent three days per week. (Doc. 8-11 at 58-63).

The ALJ found Dr. Gbadouwey's opinion to be unpersuasive because his findings were neither supported by plaintiff's medical records nor by the longitudinal evidence. (Doc. 8-2 at 26). The doctor's own notes, for example, indicate that the use of a Bipap machine eliminated plaintiff's obstructive respiratory events. (Doc. 8-2 at 27). In our review of the record, we agree with

the ALJ that Dr. Gbadouwey's findings are not supported by the evidence. As Magistrate Judge Mehalchick discussed in her R&R, it is significant that plaintiff's testimony contradicts the opinion of Dr. Gbadouwey concerning his ability to be present at work, as plaintiff testified that he was enrolled in classes requiring attendance three days a week and also attended church twice a week, never missing either. (Doc. 8-1 at 62).

The ALJ also reviewed the opinion of Dr. Stutzman. (Doc. 8-7 at 5-6). Dr. Stutzman opined on September 27, 2012 that plaintiff: could frequently lift up to twenty-five pounds and occasionally lift fifty pounds; could carry up to ten pounds frequently and twenty pounds occasionally; could stand and/or walk one hour or less in an eight hour day; had no sitting limitations; could occasionally bend, but never kneel, stoop, crouch, balance, or climb. (Id.) The ALJ gave partial weight to this opinion,[2] recognizing that it was conducted prior to plaintiff's knee arthroscopy in December 2012. (Id.)

When reviewed together, the ALJ found that the opinions of Dr. Gbadouwey and Dr. Stutzman differ in multiple respects and have drastically different limitations on plaintiff's ability to lift and carry objects and to sit. (Doc. 19 at 12). The ALJ found that in addition to differing from each other, significant contradictions exist between the two opinions with respect to the record. (Doc. 8-

---

[2] We agree with the defendant that plaintiff's claim that the ALJ "reject[ed] all opinion evidence" is an inaccurate assertion.

15

2 at 26-27). Because the ALJ articulated the reasoning for discounting these opinions as being unsupported by the record as a whole, we find that the ALJ did not err in discounting either doctor's RFC. Plaintiff's objection to Magistrate Judge Mehalchick's finding on this point will be overruled.

**Conclusion**

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, adopt Magistrate Judge Mehalchick's R&R and affirm the decision of the Commissioner. An appropriate order follows.

**Date: September 29, 2017**        s/ James M. Munley
                                    **JUDGE JAMES MUNLEY**
                                    **United States District Judge**